**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| CANADA LIFE ASSURANCE COMPANY, ) <br> CANADA LIFE INSURANCE COMPANY ) <br> OF NEW YORK, and MINNESOTA LIFE ) <br> INSURANCE COMPANY, ) <br>   ) <br>   Plaintiffs, ) <br>   ) <br>   vs. ) <br>   ) <br> BANK OF AMERICA, B IV CAPITAL ) <br> PARTNERS, L.P., SUNRISE PARTNERS, L.P., ) <br> and D.K. ACQUISITION PARTNERS, ) <br>   ) <br>   Defendants. ) | Case No. 06 C 214 |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

Canada Life Assurance Company, Canada Life Insurance Company of New York, and Minnesota Life Insurance Company filed suit in the Circuit Court of Cook County, Illinois against Bank of America, B IV Capital Partners, L.P., Sunrise Partners, L.P., and DK Acquisition Partners. The lawsuit arises out of an agreement among creditors of Telogy, Inc., which, shortly after the present was filed, filed a petition for reorganization in the Bankruptcy Court for the Northern District of California. The defendants removed the state court case to this Court pursuant to 28 U.S.C. § 1452(a) based on its relationship to the bankruptcy proceeding. Plaintiffs have moved the Court to abstain from adjudicating the case pursuant to 28 U.S.C. § 1334(c), or alternatively to remand the case to state court pursuant to 28 U.S.C. § 1452(b). For the reasons stated below, the Court grants plaintiffs' motion.

**Facts**

1

The parties to this case other than Bank of America are creditors of Telogy that hold approximately $165 million in senior secured claims against the company. They are also parties or successors to an Intercreditor Agreement among Telogy's creditors that governs what occurs if, among other things, Telogy defaults on its obligations to one of them.

A series of events between July 2, 2004 and March 23, 2005 sparked the dispute underlying this action. In July 2004, Telogy made approximately $8.6 million in payments to the holders of a certain series of the company's notes. Plaintiffs received approximately one-third of those payments. In September 2004, Telogy failed to make principal payments to certain parties to the Intercreditor Agreement, and in November 2004, Telogy's default became a special default under the terms of the Intercreditor Agreement. Compl. ¶¶ 9-18.

The special default triggered certain rights of the parties to the Intercreditor Agreement. One provision allowed the parties to demand that a recipient of a preferential payment – a payment made within ninety days of a "special default" – remit the amount received to a collateral agent, Bank of America. If certain conditions were met, the preferential payment would be distributed among the parties to the Agreement; otherwise Bank of America would to return the payment to the original recipient. Plaintiffs, who have retained allegedly preferential payments, filed this action seeking a declaratory judgment that they were not required to remit the payments to Bank of America for possible redistribution to all of the parties to the Intercreditor Agreement. Compl. ¶¶ 20-33.

Plaintiffs filed this suit in state court on November 23, 2005. Less than a week later, Telogy filed a voluntary petition for bankruptcy in the Bankruptcy Court for the Northern District of California. On January 13, 2006, the defendants removed the present case to this

Court based.

## Discussion

**1.     Subject matter jurisdiction**

Initially, we examine whether the Court has subject matter jurisdiction over this action. District courts have subject matter jurisdiction over cases "arising under" the bankruptcy laws, those "arising in" a bankruptcy proceeding, and those "related to" a bankruptcy proceeding. 28 U.S.C. § 157(a). A case "arise[s] under" the bankruptcy laws or "arise[s] in" a bankruptcy case if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case." *Barrett v. Stern*, 909 F.2d 973, 980 (7th Cir. 1990). Neither is true of the present suit, which is based on Illinois common law and properly could be (and in fact was) brought in an Illinois state court.

A case is "related to" a bankruptcy proceeding if the dispute "affects the amount of property for distribution or the allocation of property among creditors." *In re FedPak Sys., Inc.*, 80 F.3d 207, 214 (7th Cir. 1995) (quoting *In re Xonics, Inc.*, 813 F.2d 127, 131 (7th Cir. 1987)). The dispute underlying this case involves payments that Telogy already made to plaintiffs and to which Telogy no longer has any rights. As such, this dispute will have no effect on the amount of property in Telogy's bankruptcy estate. *See id.* The determinative question is therefore whether the resolution of this dispute will affect the allocation of property among Telogy's creditors.

*In re Xonics* is helpful to this inquiry. In that case, two creditors had security interests in the accounts receivable of a bankrupt corporation. The bankruptcy court approved an order under which the corporation abandoned its accounts receivable, and one of the creditors was to

3

keep the funds until they reached a mutual agreement regarding distribution. The creditors failed to reach such an agreement, and one of the creditors asked the bankruptcy court to order disbursement of its portion of the funds. *In re Xonics,* 813 F.2d at 129.

The bankruptcy court held that it lacked subject matter jurisdiction over the matter. The district court affirmed, stating that a bankruptcy court does not retain jurisdiction over property that was once part of the debtor's estate but no longer is. *Id.* The Seventh Circuit reversed. The court agreed that the bankruptcy court cannot automatically retain jurisdiction over abandoned property, but it recognized that "there could be a link between the disposition of claims to abandoned property and the treatment of other creditors." The court declined to decide the issue, but it noted that subject matter jurisdiction could exist over the creditors' dispute if deciding the ownership and distribution of the abandoned funds could affect the recoveries of other creditors in the bankruptcy proceeding. *Id.* at 131-32.

In the instant case, Telogy transferred the disputed funds to plaintiffs over a year and a half before filing its voluntary bankruptcy petition. Nonetheless, a determination regarding the ownership and distribution of the funds disputed in this case will affect the distribution of Telogy's bankruptcy estate: several of Telogy's significant creditors are involved in this lawsuit, and their rights under the Intercreditor Agreement will affect the amount owed to them by Telogy's bankruptcy estate.

In addition, Telogy's Chief Executive Officer Anthony Schiavo states in an affidavit submitted in opposition to plaintiffs' motion that Telogy filed a plan of reorganization in Bankruptcy Court on January 23, 2006 to resolve all outstanding pre-petition claims, including those of the parties to this case. According to Schiavo, implementation of the plan of

reorganization could be "seriously disrupt[ed]" if multiple courts were charged with intepreting the Intercreditor Agreement.  In fact, Schiavo states that Telogy has been advised "certain of [its] major creditor constituencies will withdraw their support for the Plan unless resolution of [this dispute] is effected through the Plan."  Schiavo Aff. ¶¶ 4-5.

Plaintiffs contend that defendants are attempting to use the proposed reorganization plan to create subject matter jurisdiction over a third party lawsuit where none exists.  These cases plaintiffs rely upon, however, involved at least one completely independent third party.  *See In re Resorts Int'l, Inc.*, 372 F.3d 154, 161 (3d Cir. 2004) (no "related to" jurisdiction over malpractice action by litigation trust fund created pursuant to reorganization plan); *Zerand-Bernal Group, Inc. v. Cox*, 23 F.3d 159, 164 (7th Cir. 1994) (no "related to" jurisdiction over products liability lawsuit against purchaser of debtor's assets pursuant to reorganization plan).  By contrast, all of the parties to this case are creditors in the Telogy bankruptcy or, in the case of Bank of America, are named as intermediary agents in Telogy's proposed plan of reorganization.  As a result, the present intercreditor dispute is similar to intercreditor disputes concerning the relative superiority of creditor claims under a subordination agreement, a type of action that other courts have found related to a debtor's bankruptcy proceeding.  *See, e.g., CoreStates Bank, N.A. v. Huls Am., Inc.*, 176 F.3d 187, 203-04 (3d Cir. 1999); *In re Best Products*, 68 F.3d 26, 30-32 (2d Cir. 1995).  The Court concludes that it has subject matter jurisdiction over this case.

**2.     Abstention**

Plaintiffs contend that the Court is required to abstain or should permissively abstain from hearing this case.  *See* 28 U.S.C. § 1334(c)(1)(2).  The Court concludes, consistent with the holdings of at least five Circuits, that a court may abstain from hearing a case related to a

5

bankruptcy proceeding that was originally filed in state court and subsequently removed to federal court. *See Stoe v. Flaherty*, __ F.3d __ , 2006 WL 156985, at *3-5 (3d Cir. Jan. 23, 2006); *Mt. McKinley Ins. Co. v. Corning Inc.*, 399 F.3d 436, 446-47 (2d Cir. 2005); *Christo v. Padgett*, 223 F.3d 1324, 1331 (11th Cir. 2000); *In re Southmark Corp.*, 163 F.3d 925, 929 (5th Cir. 1999); *Robinson v. Mich. Consolidated Gas Co.*, 918 F.2d 579, 584 n. 3 (6th Cir. 1990); *but see In re Lazar*, 23 F.3d 967, 981-82 (9th Cir. 2001).

A federal court is required to abstain from hearing a case commenced in state court that is related to a bankruptcy proceeding if the action is based on state law, there is no other basis for federal jurisdiction, one of the parties makes a timely motion for abstention, and the proceeding can be timely adjudicated in state court. 28 U.S.C. § 1334(c)(2). The parties agree that this case satisfies the first three requirements, and thus the real question is whether the Circuit Court of Cook County would adjudicate the case in a timely manner vis-a-vis the Telogy bankruptcy proceeding.

To determine whether an action can be timely adjudicated in the state forum, courts examine "(1) the backlog of the state court's calendar, (2) the status of the bankruptcy proceeding; (3) the complexity of issues; and (4) whether the state court proceeding would prolong the administration or liquidation of the estate." *In re Georgou*, 157 B.R. 847, 850 (N.D. Ill. 1993). Plaintiffs bear the burden of showing that mandatory abstention is called for. *See id.* They have met that burden.

There is no question that the Chancery Division labors under a significant caseload; in 2004, nearly 22,000 cases were filed in that Division. *See* Pltf. Ex. B. But these cases are divided among the twenty-two judges assigned to the Division (six of whom hear only mortgage

foreclosure and mechanic's lien cases). *See* Chicago Daily Law Bulletin, Feb. 15, 2006, at 13-14. This means that the average judge is responsible for approximately 1,000 new cases per year, not 4,800 as defendants rather misleadingly suggest by relying on court-wide, as opposed to Division-wide, statistics. *See* Def. Mem. at 7. Even though 1,000 new cases per year undeniably represents a significant caseload, caseload statistics by themselves tell us little; the operative question is not how many cases of all types a typical Chancery judge is responsible for, but rather how long it likely would take the typical judge to adjudicate a case of this type. In this regard, the only evidence before the Court is an affidavit from an experienced state court practitioner, submitted by plaintiffs, that suggests (and explains why) this case can be adjudicated in a matter of months. *See* Decl. of Patrick Stanton ¶¶ 8-10. That affidavit, which is uncontradicted in the present record, is sufficient to warrant a finding that any Chancery Division backlog is unlikely to lead to significant delay in adjudicating this case.

The key question, of course, is whether any backlog in the state court is likely to prolong resolution of the case in a way that will impair or impede the prompt resolution of the related bankruptcy case. Defendants contend that a proposed plan of reorganization has already been filed in the Telogy bankruptcy case; that certain creditors will withhold support for the plan unless the intercreditor dispute is adjudicated in the bankruptcy court; and that the backlog in the Chancery Division will lead to significant delay if the case is heard there. As the Court has already indicated, support for the latter point is lacking from defendants' submission. The remainder of their argument likewise does not withstand scrutiny. First of all, as plaintiffs correctly note, there is much to be done before Telogy's proposed plan, or some alternative, can be confirmed. No action can be taken on the proposed plan until Telogy has filed, and the

7

bankruptcy court has approved, a disclosure statement setting forth certain critical information. *See* 11 U.S.C. § 1125(b). Second, though the proposed plan contains a mechanism for resolving the present intercreditor dispute – a mechanism to which the plaintiffs strenuously object – it will not take effect until the plan is approved. Third, the dispute, if litigated in state court, appears to be one that can be resolved quickly and without extended discovery. And finally, the affidavit submitted by plaintiffs is insufficient to support the proposition that creditors (other than the defendants in the present case) would withhold support from a plan of reorganization if the intercreditor dispute is adjudicated in state court; the affiant does not claim direct knowledge of the supposed threat, and plaintiffs have provided no information about the threat's provenance.

For these reasons, the Court concludes that plaintiffs have met their burden of showing that abstention is required under § 1334(c)(2), and thus we need not address plaintiffs' alternative arguments in support of permissive abstention and equitable remand.

**Conclusion**

For the reasons stated above, the Court grants plaintiffs' motion for an order abstaining from adjudication of the case [docket no. 8]. For this reason, the case is remanded to the Circuit Court of Cook County, Chancery Division. The Clerk is directed to transmit forthwith to the Clerk of the Circuit Court of Cook County a certified copy of the remand order. *See* 28 U.S.C. § 1447(c).

Date: February 21, 2006

MATTHEW F. KENNELLY
United States District Judge